

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 DEC 16 AM 10: 58

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| ERIK D. ENSBERG, | No. 69644-1-I |
| Appellant, | |
| | DIVISION ONE |
| v. | |
| JASON D. NELSON and FRANCINE E. NELSON, husband and wife and the marital community comprised thereof, | UNPUBLISHED OPINION |
| Respondents. | FILED: December 16, 2013 |

SPEARMAN, A.C.J. — The main question on appeal is whether a seller of property breaches the statutory warranty deed covenant against encumbrances when, at the time of conveyance, the property is part of a homeowner's association and there is a judgment against the homeowner's association, but the owner of the property is not a judgment debtor, there is no lien against the property, and there is no evidence of the association's ability to assess the property owner to pay the judgment. We hold that the seller does not breach the warranty against encumbrances in such circumstances. We also hold that the seller does not convey unmarketable title. Therefore, we reverse the trial court's judgment in favor of the buyers of the property, respondents Jason and Francine Nelson, and remand for entry of judgment in favor of the seller, appellant Erik Ensberg, on his claim for breach of the promissory note. We also reverse the trial

court's award of attorney's fees to the Nelsons below and award attorney's fees to Ensberg on appeal based on a provision in the promissory note.

FACTS

In 2004, Erik Ensberg purchased a vacant lot ("the Property") in Chelan County at the encouragement of Jason and Francine Nelson, who had already purchased two lots adjacent to the Property. The purchase was orchestrated by the Nelsons' friend, Jack Johnson, whose company, Key Development Corporation, was developing and selling the lots.

Several years later, on January 25, 2009, the Nelsons bought the Property from Ensberg for $195,000. They made a down payment of $10,000 and financed the balance in the amount of $185,000, which was comprised of an assumption of the underlying debt owed by Ensberg of $129,603.40. Ensberg received a promissory note and deed of trust (in second position) for the balance owed by the Nelsons of $55,396.60. Ensberg was not involved in selecting the escrow or title companies or in drafting the documents, including the statutory warranty deed. The title company performed a title search prior to closing and found no judgment encumbering the Property.

Unbeknownst to the parties, at the time of the sale there was a judgment of $523,474 against Jack Johnson, Key Bay Development Corporation, and Key Bay Homeowners' Association (the HOA) of record with the Chelan County Auditor. The HOA is the governing body for the Key Bay subdivision in which the Property is located. The judgment was entered in Chelan County Superior Court on March 17, 2008 and recorded with the Chelan County Auditor on April 8,

2008. The judgment did not appear on the statutory warranty deed from Ensberg to the Nelsons.

Approximately six months after they bought the Property, the Nelsons listed it for sale. In October 2009, the Nelsons accepted an offer to purchase for $216,000. After the purchase and sale agreement was signed, a title commitment was obtained. The two prior sales of the Property had involved the same escrow agent and title company. The transaction between Ensberg and the Nelsons was to be closed using a different escrow agent and title company, the latter being North Meridian Title and Escrow, LLC.

North Meridian's preliminary title commitment listed various encumbrances on the title, including the deed of trust in favor of Ensberg. Exhibit (Ex.) 26 at 4. Paragraph 12 of Schedule B stated the following "special exception":

12. JUDGMENT:

AGAINST:         KEY BAY HOMEOWNERS ASSOCIATION, ET AL
IN FAVOR OF:   DEEP WATER BREWING, LLC
AMOUNT:        $523,474.00
CHELAN COUNTY JUDGMENT NO.: 08-9-00369-8
SUPERIOR COURT CAUSE NO.: 02-2-00848-2

Id.

The prospective buyers exercised their contractual right to disapprove any matter on the title report. On October 24, 2009, they executed an addendum to the purchase and sale agreement, requesting the Nelsons to remove the

judgment against the HOA as an exception from title[1] and to agree that:

> BUYER SHALL NOT BE LIABLE FOR ANY JUDGEMENT [SIC] SETTLEMENT AMOUNT PRESENTLY OR IN THE FUTURE OWED BY THE KEY BAY HOMEOWNERS ASSOCIATION, ET AL IN REGARD TO EXCEPTION #12 IN SCHEDULE B INVOLVING THE JUDGEMENT [SIC] IN FAVOR OF DEEP WATER BREWING LLC.
>
> SELLER WILL PAY OFF THEIR SHARE OF ANY JUDGEMENT [SIC] SETTLEMENT AMOUNT RELATED TO THEIR LIABILITY DUE FROM THEM AS A RESULT OF THE...JUDGEMENT [SIC] IN FAVOR OF DEEP WATER BREWING LLC PRIOR TO CLOSING.

Ex. 31. The Nelsons did not agree, but urged North Meridian to revisit the judgment issue.[2] North Meridian then removed the judgment against the HOA as an exception from Schedule B and instead referenced the judgment in the following "Note" in the preliminary title commitment:

> NOTE 10: JUDGMENT:
> AGAINST: KEY BAY HOMEOWNERS ASSOCIATION, ET AL
> IN FAVOR OF: DEEP WATER BREWING, LLC
> AMOUNT: $523,474.00
> ENTERED: MARCH 17, 2008
> CHELAN COUNTY JUDGMENT NO.: 08-9-00369-8
> SUPERIOR COURT CAUSE NO.: 02-2-00848-2
>
> THE JUDGMENT AGAINST THE KEY BAY HOMEOWNER'S ASSOCIATION, A WASHINGTON NONPROFIT CORPORATION (THE "ASSOCIATION"), HAS NOT ATTACHED TO THE TITLE TO THE LAND DESCRIBED IN SCHEDULE A HEREIN. IF, AFTER APPEAL, THE JUDGMENT ATTACHES TO THE ASSOCIATION'S

---

[1] The prospective buyers also objected to exceptions 14, 15, and 16 and requested the Nelsons to clear those exceptions from the title. These exceptions, as listed in the preliminary title commitment, Schedule B, related to (1) general property taxes and service charges in the amount of $1,335.07, (2) a lien claimed by the State of Washington, Department of Social and Health, against Jason Nelson in the amount of $4,534.38, and (3) a lien claimed by the State of Washington, Department of Social and Health, against Jason Nelson in t the amount of $14,455.43. Ex. 26.

[2] It is unclear whether the Nelsons agreed to the prospective buyers' other requests.

4

INTEREST, THE ASSOCIATION MAY LEVY ASSESSMENTS AGAINST EACH LOT TO RECOVER THE FUNDS OWED TO THE JUDGMENT CREDITORS. THIS NOTE PROVIDES NOTICE OF THE POTENTIAL FUTURE LIABILITY FOR SUCH ASSESSMENT(S).

Ex. 27. On November 4, 2009, the prospective buyers sent the Nelsons a rescission of the purchase and sale agreement, which the Nelsons signed on November 7. The Nelsons made no further effort to sell the Property.

The Nelsons defaulted on the underlying note and deed of trust and on Ensberg's promissory note. The Property was sold at a trustee's sale in August 2010 for an unknown amount. The foreclosure had the effect of removing Ensberg's deed of trust against the Property, but the balance on the promissory note was still due and owing. The last payment, made on September 1, 2009, brought the balance on that date to $50,012.34.

Ensberg filed suit against the Nelsons for breach of the promissory note. The Nelsons counterclaimed, alleging he breached the statutory warranty deed and failed to convey marketable title. The trial court held a bench trial, upon which the court entered written findings of fact and conclusions of law. It concluded that the judgment against the HOA was an encumbrance on the Property and that Ensberg breached the covenant against encumbrances, though it also concluded that the judgment did not render title to the Property unmarketable. The court concluded that the Nelsons' damages consisted of the difference between the market value of the Property without the encumbrance and the market value of the Property with the encumbrance. For the former, the court used the sale price of the failed sale to the prospective buyers ($216,000).

For the latter, the court used the principal amount owing to the first lien holder at the time of the trustee's sale ($129,733). The difference was $86,267.00.[3] The court next concluded that Ensberg's claim for breach of the promissory note failed because there was a failure of consideration at the time the parties entered into their contract. The court awarded the Nelsons attorney's fees and costs under a provision in the promissory note and entered judgment. Ensberg appeals.

## DISCUSSION

Ensberg contends the trial court erred in concluding that (1) he breached the warranty against encumbrances and (2) his claim for breach of the promissory note failed due to a lack of consideration.[4] We review de novo a trial court's conclusions of law following a bench trial. Edmonson v. Popchoi, 155 Wn. App. 376, 382, 228 P.3d 780 (2010), aff'd, 172 Wn.2d 272, 256 P.3d 1223 (2011).

### Breach of Statutory Warranty Deed

A grantor conveying land by statutory warranty deed makes the following covenants to the grantee:

> (1) That at the time of the making and delivery of such deed he or she was lawfully seized of an indefeasible estate in fee simple, in and to the premises therein described, and had good right and full

---

[3] The trial court nonetheless recognized that the amount of any potential encumbrance against the Property (as one of 42 lots) was unknown. It stated, in Conclusion of Law 2.3, "Here the exact amount of the encumbrance may not be known. It appears to have been anywhere from zero to $523,474.00 at the time the plaintiff sold the property to the defendants, but it was nevertheless a burden upon the land." Clerk's Papers (CP) at 20.

[4] Ensberg also argues that the judgment below must be reversed because damages were based on insufficient and speculative evidence. We do not reach this argument given that we reverse based on the trial court's erroneous conclusion that he breached the warranty against encumbrances.

power to convey the same; (2) that the same were then free from all encumbrances; and (3) that he or she warrants to the grantee, his or her heirs and assigns, the quiet and peaceable possession of such premises, and will defend the title thereto against all persons who may lawfully claim the same, and such covenants shall be obligatory upon any grantor, his or her heirs and personal representatives, as fully and with like effect as if written at full length in such deed.

RCW 64.04.030. "These covenants include both 'present' covenants, such as the warranty of seisin, which are breached at conveyance, and 'future' covenants, which may be breached or become effective after conveyance." Mastro v. Kumakichi Corp., 90 Wn. App. 157, 163, 951 P.2d 817 (1998) (citation omitted). The covenant against encumbrances is a present covenant, "and, if breached at all, is broken at the time it is made." Moore v. Gillingham, 22 Wn.2d 655, 661, 157 P.2d 598 (1945) (citations omitted).

An encumbrance has been defined by the Washington Supreme Court as

any right to, or interest in, land which may subsist in third persons, to the diminution of the value of the estate of the tenant, but consistent with the passing of the fee; and, also, as a burden upon land depreciative of its value, such as a lien, easement, or servitude, which, though adverse to the interest of the landowner does not conflict with his conveyance of the land in fee.

Hebb v. Severson, 32 Wn.2d 159, 167, 201 P.2d 156 (1948) (citations omitted). In addition to liens, easements, and servitudes, encumbrances include outstanding mortgages, leaseholds, restrictive covenants, and existing violations of a restrictive covenant are encumbrances. 18 WASHINGTON PRACTICE REAL PROPERTY § 14.3 (citing Schaad v. Robinson, 59 Wash. 346, 109 P. 1072 (1910) (outstanding mortgages); O'Connor v. Enos, 56 Wash. 448, 105 P. 1039 (1909) (leaseholds); Williams v. Hewitt, 57 Wash. 62, 106 P. 496 (1910) (restrictive

covenants); Hebb, 32 Wn.2d 159 (existing violation of restrictive covenant)). Unpaid property taxes have also been held to be encumbrances. Moore, 22 Wash. at 660-61 (warranty against encumbrance broken upon delivery of deed because of unpaid property taxes due at the time of delivery of deed).

Ensberg contends the trial court erred in concluding that he breached the warranty against encumbrances when he conveyed the Property to the Nelsons. We agree. The judgment against the HOA was not an encumbrance against the Property because the evidence did not show that the judgment constituted a "right to, or interest in" the Property subsisting in the HOA or other judgment debtors. There is no dispute that Ensberg, the owner of the Property, was not a judgment debtor in the judgment against the HOA. There is no dispute that, at the time he conveyed the Property to the Nelsons, there was no lien on the Property as a result of the judgment against the HOA.[5]

The Nelsons contend that, nonetheless, the possibility of a future assessment by the HOA from lot owners—as noted in the preliminary title commitment—to pay the judgment meant the judgment was an encumbrance on the Property. They cite a California decision, O'Toole v. Los Angeles Kingsbury Court Owners Ass'n., 126 Cal.App.4th 549 (2005), in support of their position.

---

[5] By statute, a judgment can attach as a lien against real property owned by a judgment debtor:

> The real estate of any judgment debtor, and such as the judgment debtor may acquire, not exempt by law, shall be held and bound to satisfy any judgment of the district court of the United States rendered in this state and any judgment of the supreme court, court of appeals, superior court, or district court of this state, and every such judgment shall be a lien thereupon to commence as provided in RCW 4.56.200 and to run for a period of not to exceed ten years from the day on which such judgment was entered . . . .

RCW 4.56.190.

We reject the Nelsons' contentions. There was no evidence below that the HOA had the definite right, power, or authority to assess the owner of the Property to pay the judgment or the authority to attach a lien on the Property for any failure to pay an assessment. The HOA's bylaws, covenants, and governing documents were not exhibits in the trial, and the note in the preliminary title commitment is not evidence of the HOA's power to assess lot owners. As Ensberg notes, by statute, a judgment against a condominium association is a lien in favor of the judgment lienholder against all of the units in the condominium.[6] But this case does not involve a condominium association, the statute does not apply, and the Nelsons point to no statutes that do apply. The evidence establishes, at most, that the judgment against the HOA could, in the future, if the HOA had the power to assess lot owners, result in a lien (of a presently unknown amount) against lot owners. This fails to show the existence of a present breach of the warranty against encumbrances at the time Ensberg conveyed the Property to the Nelsons.

O'Toole, aside from being non-binding, is inapposite. There, a plaintiff obtained a judgment against a condominium homeowner's association, but the association refused to pay the judgment and refused to levy a special emergency

---

[6] The statute provides,

(1) Except as provided in subsection (2) of this section, a judgment for money against the association perfected under RCW 4.64.020 is a lien in favor of the judgment lienholder against all of the units in the condominium and their interest in the common elements at the time the judgment was entered. No other property of a unit owner is subject to the claims of creditors of the association.

RCW 64.34.368.

assessment against its members. O'Toole, 126 Cal.App.4th at 551. The plaintiff obtained an order appointing a receiver and compelling the association to levy the assessment. Id. On appeal, the court interpreted and applied a California statute in holding that the association could be compelled to impose an assessment to pay the judgment in question. See id. at 553-59. The Nelsons point to no analogous Washington statutes that apply here so that the HOA could be compelled to impose an assessment against lot owners to pay the judgment.

### Marketability of Title

The Nelsons argue that even if Ensberg did not breach the warranty against encumbrances, this court should affirm the judgment on the basis that he breached his duty to convey marketable title.[7] The Nelsons rely primarily on Shinn v. Thrust IV, Inc., 56 Wn. App. 827, 786 P.2d 285 (1990).

In Shinn, a buyer of property refused to close, advising the seller that building restrictions constituted an unacceptable encumbrance and/or defect. Shinn, 56 Wn. App. at 830-32. The buyer was also concerned about the potential for litigation by third parties because the property was part of a replat that was done without the required approval of other lot owners. Id. at 831-32. The trial

---

[7] The parties disagree as to whether this argument can be raised on appeal as a basis for affirming the trial court's judgment. The Nelsons contend that it can, citing Barber v. Peringer, 75 Wn. App. 248, 877 P.2d 223 (1994) for the proposition that an appellate court can decide a case on any legal theory established by the pleadings and supported by the proof. Ensberg contends that because the issue of marketable title was argued and rejected below and neither party appealed on that issue, the Nelsons cannot raise it on appeal. We agree with the Nelsons and will consider their argument regarding marketability of title. The Nelsons prevailed below and seek no further relief from this court. As such, they were not required to file a cross-appeal of the trial court's ruling on marketable title to argue that this court may affirm on that basis. See State v. Bobic, 140 Wn.2d 250, 257, 996 P.2d 610 (2000) (State not required to file cross-appeal to argue alternative ground for sustaining trial court's order where State prevailed below and did not seek affirmative relief from court on appeal).

court concluded that the buyer breached the purchase and sale agreement. Id. at 841. On appeal, the buyer argued that its performance was excused because the sellers failed to deliver marketable title as required by the agreement, which stated that "'title of seller is to be free of encumbrances or defects except those acceptable to Purchaser.'" Id. This court held that there was a defect in title because, due to the replat, the building restriction was a potential restriction on the buildable area of the replatted lots, and the legal uncertainty as to whether the "'one dwelling per lot'" restriction applied to the replatted lots raised a "real prospect of litigation" and put the purchaser in the position of not knowing where a dwelling could legally be built on the lot. Id. at 845-46. The court also agreed with the buyer that the replat's violation of RCW 58.12.030 clearly exposed a purchaser of the property to litigation. It concluded, "Here, the record demonstrates that real doubts exist regarding the title to Lot 2, and that there is a reasonable probability of litigation arising from the plat restriction and the violation of RCW 58.12.030." Id. at 848. Therefore, title was not marketable.

The Nelsons cite the following statement from the court's discussion in Shinn:

> The Washington Supreme court has defined marketable title 'as one being free of reasonable doubt and such as a reasonably informed and intelligent purchaser, exercising ordinary business prudence, would be willing to accept. Such a title need not be perfect in the sense that it is free from every conceivable technical criticism or suspicion, but only from those possibilities of a defect which would give rise to a reasonable question as to its validity.'

Shinn, 56 Wn. App. at 847 (quoting Brown v. Herman, 75 Wn.2d 816, 823, 454 P.2d 212 (1969) (internal citation omitted)).

11

We conclude that Ensberg did not provide unmarketable title. For the same reasons he did not breach the warranty against encumbrances, the title to the Property was not unmarketable due to the judgment against the HOA. Unlike in Shinn, where there was a known, present violation of a statute and present uncertainty as to where a purchaser could legally build on the lot, here, a judgment against the HOA that might at some point result in an assessment (of an unknown amount) on lot owners did not "give rise to a reasonable question as to" the validity of title to the Property.

### Breach of Promissory Note Claim

Ensberg next contends the trial court erred in concluding that there was a lack of consideration exchanged in the underlying contract due to the encumbrance against the Property and that, therefore, his claim for breach of the promissory note failed. We agree. The Nelsons contend that Ensberg's failure to convey unencumbered and marketable title constituted a failure of consideration for the promissory note. But because we hold that Ensberg did not breach the warranty against encumbrances or provide unmarketable title, we necessarily conclude that the Nelsons' argument is without merit. We reverse and remand for entry of judgment on Ensberg's claim.[8]

---

[8] The Nelsons do not dispute that they failed to make all of the payments required under the promissory note and that the total payments they made left a balance owing of $50,012.34 plus interest at the default rate of 18 percent per annum. The Nelsons do not dispute that Ensberg made a demand for payment or that they failed to pay.

## Attorney's Fees

The trial court awarded attorney's fees to the Nelsons under a provision in the promissory note that states:

> 10. ATTORNEYS' FEES AND COSTS: Maker shall pay all costs incurred by Holder in collecting sums due under this Note after a default, including reasonable attorneys' fees, whether or not suit is brought. If Maker or Holder sues to enforce this Note or obtain a declaration of its rights hereunder, the prevailing party in any such proceeding shall be entitled to recover its reasonable attorneys' fees and costs incurred in the proceeding (including those incurred in any bankruptcy proceeding or appeal) from the non-prevailing party.

Ex. 3. Because we reverse and remand the judgment in favor of the Nelsons, we reverse the trial court's award of attorney's fees to the Nelsons and remand with instructions to award attorney's fees incurred below to Ensberg. We also award attorney's fees on appeal to Ensberg.

Reversed and remanded.

WE CONCUR:

_____, A.C.J.

_____

_____ Cox, J.