IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| RICHARD NAU, a single man, | No. 82544-5-I |
| Appellant, | |
| v. | DIVISION ONE |
| NANCY K. VOGEL, as trustee for the Mark O. Vogel Residuary Trust; and WEST REALTY, INC., a Washington corporation, | UNPUBLISHED OPINION |
| Respondents. | |

ANDRUS, A.C.J. — In the course of selling her Hood Canal property to Richard Nau, Nancy Vogel disclosed that a historic cemetery existed on the land. West Realty, Inc. (West Realty), Nau's real estate agent, gave him copies of Vogel's disclosure forms regarding this cemetery. Nau agreed to investigate this cemetery as part of a feasibility contingency. He then waived this contingency, elected to proceed with the transaction, and took possession of the property in February 2016.

In October 2017, Nau sued Vogel and West Realty claiming that they misrepresented the location of the cemetery and failed to disclose to him the Skokomish Tribe's interest in it. In a series of summary judgment orders, the trial court dismissed Nau's claims, imposed CR 11 sanctions, and awarded fees to

Vogel. Nau appeals. Because Nau failed to create issues of fact on the essential elements of his claims and the trial court did not abuse its discretion in imposing sanctions against him, we affirm.

FACTS

In 2015, Nau hired Patricia Lewallan of West Realty as his real estate agent to assist in purchasing Vogel's two Hood Canal parcels, Lots 103 and 104 of the Potlatch Beach Tracts in Mason County. The property contained a house, and a garage, and was adjacent to a historic cemetery known as Potlatch Cemetery.

Nau viewed the property twice before making an offer. During the first visit, Lewallen told Nau that there was a cemetery on the property and may have pointed to "a small cluster of headstones in an area located 40 to 50 feet away from the house and garage." On the second visit, Nau walked the property with Vogel and Lewallen. Vogel told Nau "there is a cemetery that extends onto [the] property" and she shared "where [she] thought the cemetery boundary was."

Shortly after the second property visit, Vogel's agent gave Lewallen a "Seller's Disclosure Statement Improved Property Form 17" (Form 17) dated March 15, 2015. In pertinent part, Vogel disclosed:

Potlatch Cemetery

To the best of my knowledge, there is an area approximately 70'x70' partially on my lot 103 and partially on my neighbor Lois Culik's lot 102 that was designated "Potlatch Cemetery" on the original plat. The cemetery comprises five gravestones of the Walker missionary family dating late 1800's to early 1900's. The cemetery is excluded from my tax bill. Lois remembers the tribe moving a number of Indian[1] remains from the cemetery and transferring them to a different Indian burial site around mid-1900, leaving the missionary

---

[1] We use the term "Indian" because it is used in the documents contained in the record. We intend no disrespect.

headstones. The tribe surveyed the cemetery in early 2000, but they do not have access to the cemetery, and have only visited once or twice, with my permission, in the last 15 years. Neither the tribe nor county maintain the grounds. Also visiting twice during the last 20 years was a small South Sound College class studying early settler gravesites.

On November 1, 2015, Lewallen and Nau met to discuss the property. Lewallen advised Nau of the importance of investigating the cemetery and specifically told "him to inquire with Mason County and consider commissioning a survey of the property." That same day the parties entered into a real estate purchase and sale agreement (REPSA) but, based on his earlier conversation with Lewallen, Nau conditioned the sale on the satisfaction of a Feasibility Contingency Addendum that stated "[b]uyer will look into Shoreline requirements and the graves on the property tax parcel #42226-12-60050." The contingency gave Nau 30 days to determine if the property was suitable for his intended purposes. Nau also signed the "Buyer's Acknowledgement" section of Form 17, which stated:

> Buyer hereby acknowledges that:
> A      Buyer has a duty to pay diligent attention to any material defects that are known to Buyer or can be known to Buyer by utilizing diligent attention and observation.
> B      The disclosures set forth in this statement and in any amendments to this statement are made only by the Seller and not by any real estate licensee or other party.
> C      Buyer acknowledges that, pursuant to RCW 64.06.050(2), real estate licensees are not liable for inaccurate information provided by Seller, except to the extent that real estate licensees know of such inaccurate information.
> D      This information is for disclosure only and is not intended to be a part of the written agreement between the Buyer and Seller.
> E      Buyer (which term includes all persons signing the "Buyer's acceptance" portion of this disclosure statement below) has received a copy of this Disclosure Statement (including attachments, if any) bearing Seller's signature(s).

F      If the house was built prior to 1978, Buyer acknowledges receipt of the pamphlet <u>Protect Your Family from Lead in Your Home.</u>

    . . . .

BUYER HEREBY ACKNOWLEGES RECEIPT OF A COPY OF THIS DISCLOSURE STATEMENT AND ACKOWLEDGES THAT THE DISCLOSURES MADE HEREIN ARE THOSE OF THE SELLER ONLY, AND NOT OF ANY REAL ESTATE LICENSEE OR OTHER PARTY.

Contemporaneously, Nau reviewed the plat map and Mason County's online parcel map of the property. The plat map depicts a parcel labeled "CEMETERY" between Lots 102 and 103. The face of the plat map also contains a description reading, "EXCEPTING THEREFROM THE INDIAN CEMETERY TRACT DESCRIBED AS FOLLOWS," which specifically excludes the "CEMETERY" from Lots 102 and 103 by a metes and bounds description. According to Nau, "[t]he location of the cemetery on the plat map appeared consistent with what Ms. Lewallen told [him] about its location."

On November 2, 2015, Vogel's agent provided Lewallen a revised Form 17 signed by Vogel in August 2015. The revised Form 17 also disclosed the cemetery's presence, stating:

Potlatch Cemetery. To the best of my knowledge, there is a an [sic] area approx. 70'x70' partially on my lot 103 and on my neighbor Lois Culik's lot 102 that was designated "Potlatch Cemetery" on the original plat. The plot contains 5 gravestones from the Walker family, missionaries deceased late 1800's to early 1900's. The area is excluded from my tax bill. Lois Culik remembers the tribe moving the Indian remains to a different site around 1950. The tribe surveyed the plot in 2000 but they do not have access, visiting twice in the last 20 yrs, [sic] along with a south sound college studying early settler gravesites. Neither tribe nor county maintain the grounds. I weed it, infrequently.

Later that same day, Lewallen sent the revised Form 17 to Nau in an email that read: "Here you go. Please sign p 5 in the same area as you did yesterday. You are signing that you have received the document NOT that you approve the content. send [sic] page 5 back to me." Nau signed the revised Form 17 under the "Buyer's Acknowledgement" provision, which contained language identical to the same provision in the original Form 17.

Lewallen referred him to "a county employee named Grace Miller" to investigate the cemetery. On November 7, 2015, Nau wrote a note on the Feasibility Contingency Addendum saying "I'd be surprised if onsite meeting with Mason Co [sic] can be scheduled within 15 days, especially with holidays approaching. Interested in building restrictions and impact of graves/cemetery 11/07/15."

On December 2, 2015, Nau submitted a Mason County Planning Department Pre-Inspection Application and paid a $255.00 fee for the purpose of determining any "Limitation imposed by graves on site – Any other building restrictions." Nine days later, Nau waived the feasibility contingency and informed Vogel that he was satisfied with his investigation of the property.

On January 12, 2016, Mason County employee Miller inspected the property. About two weeks later, Miller left a voice message informing Nau that he should contact Washington's Department of Archaeology and Historic Preservation (DAHP) "regarding his question of developing his parcel with graves on it." She explained he had to contact DAHP "because human graves and remains are protected under state laws." Miller also gave Nau the name and phone

number of the DAHP employee to call. But Nau did not contact the DAHP until 15 months later.

On February 13, 2016, Nau received a commitment for title insurance for the property, which Vogel purchased as part of the REPSA. That commitment did not insure against and excluded losses arising from "Indian tribal codes or regulations, Indian treaty or aboriginal rights, including easements or equitable servitudes" and "[p]ossible rights of sepulture, as disclosed by the face of the plat and tax rolls." Five days later, Nau and Lewallen again met Vogel at the property, where Lewallen witnessed Vogel tell Nau that she was "leaving property files behind" at the residence.[2] Nau denies that Vogel mentioned these files and claims that he first discovered them over a year after purchasing the property.

During this transaction, Nau requested up to four extensions of the deadline to close the sale and Vogel granted them all. The sale closed and Nau took possession of the property on February 19, 2016.

Sometime thereafter, Nau commissioned a land survey of the property. In December 2016, Nau's surveyor generated a survey showing a "corner of cemetary [sic] falls in garage."

Nau contacted the DAHP in May 2017 inquiring about the "Potlatch Cemetery and Indian Graveyard" on his property. On May 18, 2017, the DAHP responded and, in pertinent part, informed Nau that:

> This cemetery and graveyard are adjacent to your parcel of land and
> the boundaries of the cemetery parcel appear to extend some
> distance southwest towards your own parcel. Unfortunately historic

---

[2] Vogel's files were several inches thick and included, among other items, plat documents, blueprints, maps, an appraisal, and correspondence concerning the Skokomish Indian Tribe's potential interest in the cemetery and its location.

burial grounds and particularly Native American graveyards are ill-defined geographically and there may be burials and/or archaeology outside of the cemetery parcel but within your own land.

In October 2017, Nau sued Vogel and West Realty claiming that he did not receive Vogel's Form 17 disclosures and had not received accurate information about the cemetery. He alleged four claims against Vogel: (1) breach of statutory warranties, (2) breach of duty of good faith and fair dealing, (3) negligent misrepresentation, and (4) fraudulent concealment. His sole claim against West Realty alleged that it "failed to meet the standard of care owed to [him] by negligently misrepresenting the location and extent of the Potlatch Cemetery and failing to ensure that [he] received a set of Form 17 disclosures."[3] Vogel and West Realty denied Nau's allegations.

In February 2018, Vogel moved to dismiss Nau's claims for breach of warranties, negligent misrepresentation, and fraudulent concealment. In his opposition, Nau argued in part that he "never received any information from Vogel about the cemetery," Vogel "did not provide any information about [the cemetery to him] verbally, in writing, through her real estate agent, or in any other way," and he "never received the Form 17 disclosures that Vogel claims she gave to a real estate agent to give to me."

The trial court granted Vogel's motion in part, dismissing the breach of warranties and negligent misrepresentation actions. It denied the motion as to the fraudulent concealment claim.

---

[3] Nau did not assert any claims against Lewallen in his complaint.

In January 2019, Vogel moved to dismiss Nau's claim for breach of duty of good faith and fair dealing. Nau opposed the motion, but also told the trial court that "[i]n a previous declaration submitted to this Court, I stated that I never received a set of Form 17 disclosures from the seller" and "[a]fter filing that declaration, I found evidence in my personal email files that I actually did receive a set of Form 17 disclosures from Nancy Vogel. Ms. Lewallen emailed them to me prior to closing." The trial court granted Vogel's motion.

The following month West Realty moved for summary judgment dismissal of Nau's claim against it. The trial court granted the motion.

In November 2019, Vogel moved for summary judgment on Nau's sole remaining claim of fraudulent concealment. With new counsel at this point, Nau conceded that his complaint "does say fraudulent concealment," but argued that the facts as pleaded "state a claim for fraud, not fraudulent concealment." Nau reiterated: "This is a claim for fraud. This isn't a claim for fraudulent concealment. There's no allegation that there was any act of concealment." He also conceded that Lewallen had referred him to Grace Miller to inquire about the cemetery. The trial court granted the motion and dismissed Nau's complaint.

Vogel later sought attorney fees under the REPSA, CR 11, and RCW 4.84.185. Concluding Nau's claims were frivolous in violation of CR 11, the trial court awarded attorney fees in the amount of $43,029.73 as a sanction. Nau appeals.

ANALYSIS

Nau challenges the summary judgment dismissal of his negligence-based claims against Vogel and West Realty and the award of CR 11 sanctions.[4]

A. Standard of Review

We review summary judgment orders de novo, engaging in the same inquiry as the trial court. Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). We view the facts and all reasonable inferences in the light most favorable to the nonmoving party. Id. Summary judgment is proper if there are no genuine issues of material fact. Id.; CR 56(c). "A material fact is one that affects the outcome of the litigation." Owen v. Burlington N. & Santa Fe R.R., 153 Wn.2d 780, 789, 108 P.3d 1220 (2005).

A defendant moving for summary judgment "has the initial burden to show the absence of an issue of material fact, or that the plaintiff lacks competent evidence to support an essential element of [his or her] case." Seybold v. Neu, 105 Wn. App. 666, 676, 19 P.3d 1068 (2001). If the defendant meets this initial showing, then the inquiry shifts to the plaintiff to set forth specific evidence to establish the elements of his or her claims. Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). The responding plaintiff may not rely on speculation, conclusory statements, mere allegations, or argumentative assertions. CR 56(e); Sanders v. Woods, 121 Wn. App. 593, 600, 89 P.3d 312 (2004). If the plaintiff fails to establish the existence of an essential element that

---

[4] Nau does not appeal the trial court's dismissal of his claims of breach of warranties, breach of duty of good faith and fair dealing, and fraudulent concealment against Vogel. Thus, we conclude that Nau has abandoned these issues on appeal.

he or she bears the burden of proving at trial, then summary judgment is warranted. Young, 112 Wn.2d at 225.

"In ruling on a motion for summary judgment, a court must apply the standard of proof which will apply at trial." Gossett v. Farmers Ins. Co., 133 Wn.2d 954, 973, 948 P.2d 1264 (1997) (citing Sedwick v. Gwinn, 73 Wn. App. 879, 885, 873 P.2d 528 (1994)). Accordingly, "[w]hen weighing summary judgment in a civil case in which the standard of proof is clear, cogent, and convincing evidence," we must determine "whether a rational trier of fact could find from the evidence in the record that the nonmoving party satisfied this evidentiary burden."[5] Tiger Oil Corp. v. Yakima County, 158 Wn. App. 553, 562, 242 P.3d 936 (2010) (citing Woody v. Stapp, 146 Wn. App. 16, 22, 189 P.3d 807 (2008)). Summary judgment is appropriate where "the evidence is less than clear and convincing." Gossett, 133 Wn.2d at 973.

We may "sustain the trial court's judgment upon any theory established by the pleadings and supported by the proof, even if the trial court did not consider it." LaMon v. Butler, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989) (citing Wendle v. Farrow, 102 Wn.2d 380, 382, 686 P.2d 480 (1984)).

B. Nau's Claim of Negligent Misrepresentation Against Vogel

Nau argues the trial court erred when it summarily dismissed his negligent misrepresentation claim against Vogel. We disagree.

---

[5] "Clear, cogent, and convincing evidence is a quantum of proof that is less than 'beyond a reasonable doubt,' but more than a mere 'preponderance.'" Tiger Oil, 158 Wn. App. at 562 (quoting Davis v. Dep't of Labor & Indus., 94 Wn.2d 119, 126, 615 P.2d 1279 (1980)). "It is the quantum of evidence sufficient to convince the fact finder that the fact in issue is 'highly probable.'" Id. (quoting In re Welfare of Sego, 82 Wn.2d 736, 739, 513 P.2d 831 (1973)).

To establish negligent misrepresentation, Nau must prove (1) Vogel supplied information for his guidance in their business transaction that was false, (2) Vogel knew or should have known that the information was supplied to guide him in their business transaction, (3) Vogel was negligent in obtaining or communicating the false information, (4) he relied on the false information, (5) his reliance was reasonable, and (6) the false information proximately caused his damages. Ross v. Kirner, 162 Wn.2d 493, 499, 172 P.3d 701 (2007). He must prove every element by clear, cogent, and convincing evidence. Id.

On summary judgment, Vogel argued she disclosed what she knew about the cemetery, that Nau had actual knowledge of the cemetery and a duty to investigate, and that any reliance on Vogel's statements was not justifiable in light of his waiver of the feasibility contingency before closing. In dismissing the claim, the trial court concluded that there was no evidence "Vogel provided false information."

Generally, purchasers of property have a right to rely on a seller's written representations. Jackowski v. Borchelt 174 Wn.2d 720, 738, 278 P.3d 1100 (2012) (purchaser had a right to rely on representations in a Form 17 that the property did not contain fill material). But "[o]nce a buyer discovers evidence of a defect, they are on notice and have a duty to make further inquiries. They cannot succeed when the extent of the defect is greater than anticipated, even when it is magnitudes greater." Douglas v. Visser, 173 Wn. App. 823, 832, 295 P.3d 800 (2013); Miebach v. Colasurdo, 102 Wn.2d 170, 176, 685 P.2d 1074 (1984)

- 11 -

("[K]nowledge of facts sufficient to excite inquiry is constructive notice of all that the inquiry would have disclosed.").

On appeal, Nau admits that he "does not recall receiving a direct and false representation of fact from Ms. Vogel" and "has no specific recollection of the seller Vogel giving him incorrect information about the location of the cemetery on the property," but Vogel did testify that she walked the property with Nau and "showed him where [she] thought the cemetery boundary was." Nevertheless, even if Vogel conveyed incorrect information as to the boundaries of the cemetery, once she put him on notice of this cemetery's existence and its possible boundaries, he had a duty to investigate whether the cemetery extended onto Vogel's land and whether its presence would affect the landowner's rights.

It is undisputed Vogel disclosed the existence and general location of the cemetery. And the cemetery's tombstones were visible; they were not hidden. Nau signed a feasibility contingency in which he agreed to investigate the cemetery and took steps to do so. He reviewed maps and asked the Mason County Planning Department to investigate the cemetery before closing. But he then waived the contingency and closed the transaction, despite receiving advice from a Mason County employee that he should contact the DAHP to get information about developing a parcel with graves on it. Had Nau contacted the DAHP before closing he would have learned all the information that he subsequently discovered in May 2017.

Given Nau's actual knowledge of the cemetery and his failure to investigate the impact its presence would have on his property rights, we conclude no jury

could find that he justifiably relied on any hypothetical false information provided by Vogel. The trial court did not err in dismissing Nau's negligent misrepresentation claim against Vogel.

C. Nau's Fraud Claim

Nau argues the trial court erred in dismissing his fraud claim against Vogel, and in mistaking the claim to be one of fraudulent concealment, "based on the inartful labeling of those claims in headings" in his complaint. There was no error.

"While inexpert pleadings may survive a summary judgment motion, insufficient pleadings cannot." Pac. Nw. Shooting Park Ass'n v. City of Sequim, 158 Wn.2d 342, 352, 144 P.3d 276 (2006) (citing Lewis v. Bell, 45 Wn. App. 192, 197, 724 P.2d 425 (1986)). Washington is a notice pleading state and simply requires that a complaint state "(1) a short and plain statement of the claim showing that the pleader is entitled to relief and (2) a demand for judgment for the relief to which the pleader deems the pleader is entitled." Id.; CR 8(a). "Complaints that fail to give the opposing party fair notice of the claim asserted are insufficient." Pac. Nw. Shooting Park, 158 Wn.2d at 352 (citing Dewey v. Tacoma Sch. Dist. No. 10, 95 Wn. App. 18, 26, 974 P.2d 847 (1999) (stating that a party who fails to plead a cause of action 'cannot finesse the issue by later inserting the theory into trial briefs and contending it was in the case all along.')).

On a claim of fraudulent concealment, a seller has a duty to speak where "(1) the residential dwelling has a concealed defect; (2) the vendor has knowledge of the defect; (3) the defect presents a danger to the property, health, or life of the purchaser; (4) the defect is unknown to the purchaser; and (5) the defect would

not be disclosed by a careful, reasonable inspection by the purchaser." Alejandre v. Bull, 159 Wn.2d 674, 689, 153 P.3d 864 (2007) (citing Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co., 115 Wn.2d 506, 524, 799 P.2d 250 (1990)). Here, the complaint alleged that "Vogel concealed from Nau material facts regarding the Property's condition with the intent to fraudulently induce [him] to purchase the Property," "Vogel had an obligation to disclose all material facts regarding the Property's condition to Nau," and "Vogel's fraudulent concealment" caused Nau's damages. He clearly alleged a claim of fraudulent concealment against Vogel.

> The elements of fraud are quite different and require a party to prove
>
> (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff.

Stiley v. Block, 130 Wn.2d 486, 505, 925 P.2d 194 (1996).[6] While Nau asserted a negligent misrepresentation claim against Vogel, he did not allege fraud.

Because Nau did not allege Vogel committed fraud in his complaint, we do not address the merits of this claim.

D. Nau's Negligent Misrepresentation Claim Against West Realty

Nau next contends the trial court erred in dismissing his negligent misrepresentation claim against West Realty. Nau claims that he has a specific recollection of Lewallen giving him incorrect information about the location of the

---

[6] Each element of fraud must be established by clear, cogent, and convincing evidence. Stiley, 130 Wn.2d at 505.

cemetery and that his "recollection is consistent with the documentary record." The record does not support this claim.

Below, West Realty moved for summary dismissal arguing Nau had no evidence that Lewallen made any negligent representations about the location and extent of the cemetery and that, even assuming she had, Nau did not justifiably rely on Lewallen's misrepresentations. Nau opposed, declaring: "When I went to view the Property as a potential buyer for the first time with Ms. Lewallen, she told me there was a cemetery on the Property. I believe she pointed it out to me" and "[t]o the best of my recollection, the area she pointed to was a small cluster of headstones in an area located 40 to 50 feet away from the house and garage." (Emphasis added.) The trial court concluded that at most, Nau phrased his allegation as Lewallen "might have shown" where the cemetery was on the property which "sounds like speculation."

On appeal, Nau does not cite any evidence in the record indicating that Lewallen misrepresented the location of the cemetery. We agree that Nau's testimony was speculation, not evidence. It is well-settled that speculation and conclusory statements are insufficient to defeat summary judgment. Sanders, 121 Wn. App. at 600.

Moreover, even if the evidence showed that Lewallen pointed to a spot and told Nau the cemetery was located there, Nau's claim fails because he could not justifiably rely on Lewallen's representations. This is so because Nau was on notice of the cemetery's existence and had numerous sources of information triggering his duty to investigate the cemetery prior to closing, including Vogel's

- 15 -

original and revised Form 17, the plat map, the county's online parcel viewer maps, his contacts with the county's planning department, the title insurance coverage exemptions, and the county's recommendation to contact the DAHP.

For these reasons, we agree with the trial court's dismissal of Nau's negligent misrepresentation claim against West Realty. There was no error.

E. Nau's Negligence Claim Against West Realty

Nau contends West Realty, through Lewallen's actions, was negligent by breaching several duties owed to him under chapter 18.86 RCW. But he submitted no evidence to the trial court to establish any breaches of any statutory provision.

He first argues that Lewallen failed to inform him of the importance of the Form 17 and she "vouched" for Vogel's representations about where the cemetery was located in violation of RCW 18.86.030(1)(a), which requires a real estate agent to "exercise reasonable skill and care." Real estate brokers owe the duties listed in RCW 18.86.030 to "all parties to whom the broker renders real estate brokerage services." "In 2013, the legislature amended RCW 18.86.110 in light of the Supreme Court's holding in Jackowski v. Borchelt that real estate brokers owed clients common law fiduciary duties in addition to the statutory duties." Beauregard v. Riley, 9 Wn. App. 2d 248, 255, 443 P.3d 827 (2019) (citing Jackowski, 174 Wn.2d at 732-33). "The amendment makes clear that '[t]he duties under this chapter are statutory duties and not fiduciary duties. This chapter supersedes the fiduciary duties of an agent to a principal under the common law.'" Id. (quoting RCW 18.86.110).

Nau presented no evidence as to how West Realty failed to exercise reasonable skill and care in this transaction. Rather, Nau acknowledges on appeal that "it is true that Ms. Vogel disclosed the presence of the cemetery onsite and Ms. Lewallen discussed it with" him. And the evidence indicates that Nau and Lewallen discussed his interest "in learning more about whether the cemetery would pose any building restrictions associated with the property," which resulted in him signing a feasibility contingency to investigate the cemetery.

As for Nau's allegation that Lewallen vouched for Vogel's representations, this contention ignores the fact that he signed several documents affirmatively acknowledging that he could not rely on any statement from Lewallen because she was relying solely on information provided by the seller.[7] Thus, Nau failed to establish a breach of West Realty's statutory duty under RCW 18.86.030(1)(a).

Next, Nau asserts Lewallen failed to advise him "to seek expert advice on matters relating to the transaction that [were] beyond [her] expertise" contrary to the duties set forth in RCW 18.86.040(1)(c). Specifically, he says Lewallen did not at any point advise him to seek expert advice concerning any aspect of the cemetery, she did not suggest that he confirm the cemetery's location, and she did not suggest that he contact the county or any agency officials about it. But Nau admitted in one of his declarations that Lewallen "referred" him to Mason County employee Miller to investigate any building restrictions posed by the cemetery. It

---

[7] In the Form 17, Nau acknowledged: "THE FOLLOWING ARE DISCLOSURES MADE BY SELLER AND ARE NOT THE REPRESENTATIONS OF ANY REAL ESTATE LICENSEE OR OTHER PARTY . . . AND ACKNOWLEGES THAT THE DISCLOSURES MADE HEREIN ARE THOSE OF THE SELLER ONLY, AND NOT OF ANY REAL ESTATE LICENSEE OR OTHER PARTY." Nau signed the REPSA, which contained a clause saying: "Buyer and Seller agree . . . all representations and information regarding the Property and the transaction are solely from the Seller or Buyer, and not from any Broker."

is undisputed that Lewallen arranged for Miller to inspect the property and that Miller, in turn, referred Nau to an expert (the DAHP contact) to ask about the very issues he now criticizes Lewallen about. We see no merit to Nau's assertion that West Realty breached its duty to refer him to an expert because the record clearly shows otherwise.

Nau also contends that West Realty breached its duty under RCW 18.86.030(1)(d), which requires real estate agents to "disclose all existing material facts known by the broker and not apparent or readily ascertainable to a party." He suggests that a competent real estate agent should have known about the Skokomish Indian Tribe's potential jurisdiction over the cemetery and disclosed that fact to him. However, Nau appears to misunderstand the scope of West Realty's duty here.

This subsection imposes a duty to disclose only what the broker knows and cannot "be construed to imply any duty to investigate matters that the broker has not agreed to investigate." RCW 18.86.030(1)(d). Additionally, "[u]nless otherwise agreed, a broker owes no duty to conduct an independent inspection of the property . . . and owes no duty to independently verify the accuracy or completeness of any statement made by either party." RCW 18.86.030(2). Nau has not identified any evidence showing that Lewallen knew any more about the Skokomish Indian Tribe's interests in the cemetery than he did and failed to disclose that information to him. Nor is there any evidence that Lewallen agreed to investigate this issue on behalf of Nau. And Lewallen was not obligated to

- 18 -

independently conduct such an investigation for him. Id. We see no statutory breach here.

Finally, Nau claims that there is "a strong inference" that West Realty sought to earn a commission and "failed to protect him from a disastrous transaction" in violation of its duty to "deal honestly and in good faith" under RCW 18.86.030(1)(b). But Nau did not raise this argument on summary judgment, so we decline to address this argument made for the first time on appeal.[8] RAP 9.12; Sourakli v. Kyriakos, Inc., 144 Wn. App. 501, 509, 182 P.3d 985 (2008) ("An argument neither pleaded nor argued to the trial court cannot be raised for the first time on appeal.").

Because there is no evidence of statutory breach, we affirm the trial court's dismissal of these claims against West Realty.

F.  CR 11 Sanctions

Lastly, Nau argues the trial court erred in imposing CR 11 sanctions.[9] He contends that his claims against Vogel were inartfully pleaded, not frivolous. We disagree.

We review a decision on CR 11 sanctions for abuse of discretion, asking whether the trial court's decision was manifestly unreasonable or based on untenable grounds. MacDonald v. Korum Ford, 80 Wn. App. 877, 884, 912 P.2d 1052 (1996). A trial court may award fees under CR 11 against an attorney or a

---

[8] In opposition to summary judgment, Nau argued that "Lewallen breached her statutory duty to deal fairly and honestly in representing the cemetery's location." He did not claim that West Realty put its interests in earning a commission above its duty to fairly represent him in this sale.

[9] Nau was represented by two different attorneys during this litigation. The record is unclear, and none of the parties address, whether the order imposed sanctions against Nau, his original counsel, or his substitute counsel. Generally, an attorney sanctioned under CR 11 is an aggrieved party and may seek review of a sanctions order under RAP 3.1. Splash Design, Inc. v. Lee, 104 Wn. App. 38, 44, 14 P.3d 879 (2000).

party for filing a pleading that is not grounded in fact or warranted by law or is filed in bad faith for an improper purpose. Loc Thien Truong v. Allstate Prop. & Cas. Ins. Co., 151 Wn. App. 195, 207, 211 P.3d 430 (2009). The court cannot impose CR 11 sanctions unless it finds that the attorney who signed and filed the complaint failed to conduct a reasonable inquiry into the factual and legal basis of the claim. Bryant v. Joseph Tree, Inc., 119 Wn.2d 210, 220, 829 P.2d 1099 (1992). The court applies an objective standard to determine whether a reasonable attorney in like circumstances could believe their actions to be factually and legally justified. Id.

The trial court concluded that Nau's claims against Vogel for breach of statutory warranties, negligent misrepresentation, and breach of duty of good faith and fair dealing were meritless. We find no abuse of discretion here.

Nau conceded to the trial court that his breach of duty of good faith and fair dealing claim was meritless and "could be sanctionable." As to his negligent misrepresentation claim, Nau initially claimed that Vogel never provided him any information in a Form 17 about the cemetery verbally or in writing, but in later declarations he stated exactly the opposite. And the undisputed evidence establishes that Vogel did so.

Lastly, his claims asserting breach of the warranties of seisin, against encumbrances, and quiet enjoyment were frivolous. The warranty of siesin guarantees that, at the time of conveyance, the seller has possession, right of possession, and complete legal title to the property. Double L. Props., Inc. v. Crandall, 51 Wn. App. 149, 152-53, 751 P.2d 1208 (1988) (quoting RCW 64.04.030). Vogel had possession and legal title to the property she sold to Nau

and there are no allegations that a third party had actual title to the property. So, there was no merit to Nau's alleging a breach of this covenant.

A warranty against encumbrances includes liens, easements, servitudes, mortgages, leaseholds, restrictive covenants, judgments, contracts of sale, and taxes assessed. See Ensberg v. Nelson, 178 Wn. App. 879, 887-88, 320 P.3d 97 (2013); Stone v. Sexsmith, 28 Wn.2d 947, 951, 184 P.2d 567 (1947) (citing Berger v. Weinstein, 63 Pa. Super. Ct. 153 (1916)). Nau failed to claim and prove any undisclosed encumbrances exist on the property he purchased.

Finally, the warranty of quiet enjoyment is a covenant "generally breached after conveyance, when a third party asserts a claim to the property." Rowe v. Klein, 2 Wn. App. 2d 326, 329, 409 P.3d 1152 (2018). Nau presented no evidence to the trial court showing that a third party was actively challenging his possession of the property.

In view of the record, we understand why the trial court deemed these claims against Vogel to be meritless. We affirm the court's CR 11 sanctions.[10]

G. Attorney Fees

Vogel seeks an award of attorney fees on appeal under paragraph "q" of the REPSA and RAP 18.9(a). Paragraph "q" of the REPSA provides that "if Buyer or Seller institutes suit against the other concerning this Agreement the prevailing party is entitled to reasonable attorneys' fees and expenses." Because Nau instituted suit against Vogel and his claims "concern" the REPSA, Vogel is entitled to an award of attorney fees under this contract provision. See Brooks v. Nord, 16

_____

[10] Nau does not challenge the amount of the trial court's fee award.

Wn. App. 2d 441, 446-450, 480 P.3d 1167 (2021) (paragraph "q" of REPSA authorizes award of attorney fees for misrepresentation claims based on Form 17).[11]

Therefore, we award Vogel reasonable attorney fees on appeal subject to her compliance with RAP 18.1.

We affirm.

_Andrus, A.C.J._

WE CONCUR:

---

[11] Because Vogel is entitled to attorney fees under the REPSA, we need not address Vogel's contention that this appeal was frivolous.